**GENERAL CASUALTY OF WISCONSIN, Appellant–Plaintiff,**

v.

**DIVERSIFIED PAINTING SERVICE, INC., Appellee–Defendant, Counter-claimant, Third–Party Plaintiff and Appellee,**

**and**

**Robert A. Hall Insurance Agency, Third–Party Defendant Below.**

No. 29A02–9204–CV–00164.

Court of Appeals of Indiana, Second District.

Dec. 14, 1992.

———

John T. Hume, III, Andrea R. Reed, Hume, Smith, Geddes & Green, Indianapolis, for appellant.

Robert R. Clark, Richard S. Pitts, Lowe, Gray, Steele & Hoffman, Indianapolis, for appellee.

SHIELDS, Judge.

General Casualty of Wisconsin (General Casualty) appeals the trial court's denial of its motion for summary judgment and its granting of Diversified Painting Service, Inc.'s (DPS) similar motion. We reverse.

### ISSUE

Did the trial court err in determining DPS's insurance policy issued by General Casualty was ambiguous and thus must be interpreted in favor of DPS?

### FACTS

Diversified Painting Service, Inc. (DPS) is a commercial and industrial painting company. In May, 1989, while painting a water tower, DPS accidentally "oversprayed," spraying 60 to 80 automobiles with paint. DPS was insured by General Casualty of Wisconsin at the time, and forwarded to it the claims made by the owners of the damaged automobiles.

DPS's insurance policy contained a deductible of $250.00. A dispute arose between DPS and General Casualty concerning whether this deductible applied to the "occurrence" of overspraying, thus making DPS liable for a total of $250.00, or to each "claim" made as a result of the overspraying, thus making DPS liable for the first $250.00 of damage suffered by each automobile owner who filed a claim. In October, 1989, General Casualty filed a complaint seeking a declaratory judgment on the issue. DPS filed a counterclaim alleging General Casualty had breached its insurance contract and seeking compensatory and punitive damages. Both parties filed motions for summary judgment; the trial

court denied General Casualty's motion and granted DPS's.

General Casualty appeals.

### DISCUSSION

 When reviewing a ruling on summary judgment, we apply the same standard as the trial court. *Babcock v. Lafayette Home Hosp.* (1992), Ind.App., 587 N.E.2d 1320, 1323. Summary judgment is properly granted only when there is no genuine issue of material fact raised by the material designated by the parties and the moving party is entitled to judgment as a matter of law. *Indiana Dept. of State Revenue v. Caylor–Nickel Clinic, P.C.* (1992), Ind., 587 N.E.2d 1311, 1313; *Babcock*, 587 N.E.2d at 1323. We are not bound by the trial court's rationale, but instead may affirm if summary judgment is proper under any theory sustainable in the designated record. *See Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411.

 The interpretation of an insurance contract is primarily a question of law for the court. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 668. "In construing a written insurance contract, we may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of an insurance contract." *American States Ins. v. Adair Indus.* (1991), Ind.App., 576 N.E.2d 1272, 1273 (citation omitted). "If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning." *Tate*, 587 N.E.2d at 668 (citation omitted). The fact that the parties disagree as to the interpretation of the contract does not by itself establish an ambiguity; instead, we will find the contract to be ambiguous only if it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning. *American States Ins.*, 576 N.E.2d at 1274.

 DPS's insurance policy contains the following provisions:

[General Casualty's] obligation to pay damages because of "property damage"

applies only in excess of any deductible amount stated in the Declarations. The limits of insurance applicable to each "occurrence" shall be reduced by the amount of such deductible.

. . .

The deductible amount applies to all damages because of "property damages" sustained by one person or organization as a result of any one occurrence.

Record at 48.

DPS argues the use of the term "occurrence" creates an ambiguity in these provisions. The word "occurrence" is defined within the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Record at 51.

DPS correctly observes that the overspraying of sixty to eighty cars was one "occurrence" under the policy, and that the policy provides that "the limits of insurance applicable to each 'occurrence,' shall be reduced by the amount of [the] deductible." Record at 48. However, DPS's argument ignores the fact that the Declarations clearly states a "PROPERTY DAM-

AGE PER CLAIM DEDUCTIBLE" of $250.00. Record at 21. These provisions clearly and unambiguously indicate that the $250.00 deductible applies to each claim.[1] Thus, there is no merit to DPS's assertion that "[b]y its own terms, General Casualty's policy requires an insured, like [DPS] to pay only one deductible for each occurrence—not each claim." Appellant's Brief at 15. Instead, it illustrates only that, by the express terms of the contract, the limits of insurance apply to each "occurrence," while the deductible amount applies to each "claim."[2]

Judgment is reversed and this cause is remanded with instructions to grant General Casualty's motion for summary judgment.

CHEZEM and SULLIVAN, JJ., concur.

---

1. While the term "claim" is not expressly defined in the policy, its plain and ordinary meaning is clearly different from that of "occurrence." *See Insurance Corp. of Am. v. Dillon, Hardamon & Cohen* (1988), N.D.Ind., 725 F.Supp. 1461, 1466 n. 6 (listing cases distinguishing "claim" from "occurrence"). The dictionary definition of "claim" is "a demand for something due or believed to be due." Webster's Seventh New Collegiate Dictionary (1965). In this context, then, "claim" refers to the demand from each individual automobile owner for compensation for the damage done to his or her automobile. Therefore, out of one "occurrence," the overspraying, sixty to eighty "claims" have arisen. Under the express terms of its insurance contract, DPS is responsible for a deductible of $250.00 for each of these claims.

2. DPS points to *Bethpage Water Dist. v. S. Zara & Sons Contracting Co.* (1989), 154 A.D.2d 637, 546 N.Y.S.2d 645, and *Wilkinson & Son v. Provi-* *dence Washington Ins. Co.* (1973), 124 N.J.Super. 466, 307 A.2d 639, to support its assertion that its policy calls for a "per occurrence" deductible. Those cases are inapposite to this one, however. In those cases, only one person or organization suffered damages, and thus there was only one "claim"; the dispute involved whether the damages suffered were the result of one or multiple "occurrences." Here, there is no dispute that the overspraying was one "occurrence"; the dispute involves whether the deductible applies to that occurrence or to each individual "claim." We note, however, that even if these cases were applicable, it would not be appropriate for us to look to extrinsic evidence to interpret the policy language, as we have found it to be unambiguous. *Tate,* 587 N.E.2d at 668. We therefore also will not consider DPS's argument that the past conduct of both parties indicates that they intended the deductible to be applied on a per occurrence basis.